COURT OF APPEALS OF VIRGINIA


Present: Judges Bray, Annunziata and Frank


ANTONIO MILLER, SR.

                                        MEMORANDUM OPINION*
v.    Record No. 0320-00-2                  PER CURIAM
                                          JULY 25, 2000
RICHMOND DEPARTMENT OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Randall G. Johnson, Judge

            (Robert D. Jacobs; Morrissey, Hershner &
            Jacobs, on brief), for appellant.

            (Kate O'Leary, Assistant City Attorney;
            Michael R. Talbert, Guardian ad litem for
            the minor children, on brief), for appellee.


      Antonio Miller, Sr. appeals from a decision terminating his

parental rights of his two sons, Antonio Miller, Jr. and Andre L.

Miller.  The trial court found that the Richmond Department of

Social Services (RDSS) presented clear and convincing evidence

establishing the statutory requirements set out in Code

§ 16.1-283(C)(1) and (2) for termination of Miller's parental

rights.  Miller argues the trial court erred in explicitly or

implicitly finding that:  (1) RDSS proved by clear and convincing

evidence that Miller, without good cause, failed to maintain

contact with and to provide or substantially plan for the future

of the children for a period of six months after the children's

---

      * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

placement in foster care; (2) RDSS proved by clear and convincing evidence that Miller was unable or unwilling within a reasonable period of time not to exceed twelve months from the date his children were placed in foster care to remedy substantially the conditions which led to or required continuation of the children's foster care placement; (3) it is in the best interests of the children that Miller's parental rights be terminated; (4) RDSS proved by clear and convincing evidence that RDSS used reasonable and appropriate efforts to communicate with Miller and to strengthen the parent-child relationships; and (5) RDSS proved by clear and convincing evidence that RDSS used reasonable and appropriate efforts to assist Miller to remedy substantially the conditions which led to or required continuation of the children's foster care placement.  We conclude the appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

Antonio Miller, Jr. was born on August 15, 1990, and Andre Miller was born on September 19, 1992.  RDSS received numerous complaints from Miller's neighbors that the boys were often hungry, dirty, and unsupervised.  Custody of the children was granted to RDSS on November 14, 1994, and the boys were residing in Miller's home when they were removed.  At that time, Miller was ordered to take parenting classes, enter substance abuse

-

treatment, obtain adequate housing, obtain employment and take a CPR class.

Miller attended one session of a parenting class in 1996. He entered at least three drug treatment programs but he did not complete any of the programs in the past five years. Over the years, RDSS referred Miller to certain parenting classes, numerous drug treatment programs, and counseling opportunities. RDSS offered visitation with the children, transportation reimbursement, and mediation services. Over recent years, RDSS had made twenty-six appointments with Miller, and he only kept one.

Miller also failed to obtain adequate housing, and, for the past two to three years, he has lived with his girlfriend and her two teen-aged daughters in a two-bedroom apartment. Miller had no visitation with the boys in 1994. In 1995 and 1996 he visited the children three times each year. He had two visits with the boys from July 1997 through April 13, 1999. Miller visited the boys twice from May 1999 through December 14, 1999.

The children have been with the foster parent since November 30, 1994, and the foster parent is a prospective adoptive parent. The social care worker testified the boys are doing "very well" in the foster home, and although Andre has "special needs," the needs are "being addressed." Andre has attention deficit disorder, has been diagnosed as emotionally disturbed, and attends special

-

education classes.  The boys have a close bond with their foster mother, consider her as their mother, and they call her "Mom."

Miller testified he is planning to buy a house, but he could not identify the location of the house or the name of a realtor with whom he was working to purchase the house.  Miller has also been employed as a mover for about fifteen years.  He stated his job often requires him to travel out of town, making regular visitation with the children difficult.  Miller disputed that he had missed twenty-six appointments with RDSS.  He also disputed the number of times the social workers stated he has visited the boys in recent years.  He testified he has visited the children about fifty times over the past five years.  He also stated he sees his other three children often, although none of them live with him.

Miller testified that he had left messages at RDSS, and no one has returned his calls.  Miller stated he attended an inpatient drug-counseling program for four months.  He then completed another forty-five day program, but did not complete the after-care program.  He stated he no longer uses illegal drugs and has not used drugs for two years.  Miller admitted he had never contacted the children's guardian ad litem when he experienced difficulty in arranging visitation with the boys.

## ANALYSIS

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount

-

consideration of a trial court is the child's best interests."

Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128,

409 S.E.2d 460, 463 (1991).

> "In matters of a child's welfare, trial
> courts are vested with broad discretion in
> making the decisions necessary to guard and
> to foster a child's best interests."  The
> trial court's judgment, "when based on
> evidence heard ore tenus, will not be
> disturbed on appeal unless plainly wrong or
> without evidence to support it."

Id. (citations omitted).

The trial court found that RDSS presented clear and

convincing evidence meeting the statutory requirements set out in

Code § 16.1-283(C)(1) and (2).  "Code § 16.1-283 embodies 'the

statutory scheme for the . . . termination of residual parental

rights in this Commonwealth' [which] . . . 'provides detailed

procedures designed to protect the rights of the parents and their

child,' balancing their interests while seeking to preserve the

family."  Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540

(1995) (citations omitted).

Code § 16.1-283(C)(1) provides, in pertinent part, that the

residual parental rights of a parent of a child placed in foster

care may be terminated if the court finds by clear and convincing

evidence that it is in the best interests of the child and that

> [t]he parent . . . [has], without good
> cause, failed to maintain continuing contact
> with and to provide or substantially plan
> for the future of the child for a period of
> six months after the child's placement in
> foster care notwithstanding the reasonable

-

and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship.  Proof that the parent . . . [has] failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

Code § 16.1-283(C)(2) provides, in pertinent part, that the parent's parental rights may be terminated if the court finds by clear and convincing evidence that it is in the best interests of the child and that

[t]he parent . . ., without good cause, [has] been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.  Proof that the parent . . ., without good cause, [has] failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent . . . and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition.  The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

-

Miller contends the trial court erred in finding RDSS proved by clear and convincing evidence that Miller, without good cause, failed to maintain contact with and to provide or substantially plan for the future of his children for a period of six months after their placement in foster care. He argues he has maintained contact with the boys for the five years they have been in the custody of RDSS. Miller also contends he has good cause for not visiting the children more often because his job requires him to travel. He asserts he has remedied substantially the conditions which led to the foster care placement.

We find substantial evidence in the record supporting the trial court's finding that Miller has made "some contact" with the children, but he has not made sufficient contact to comply with the statute, and he has failed to remedy substantially the conditions which led to their foster care placement. The trial court did not accept Miller's testimony that he had visited the boys fifty times over the past five years. The trial court accepted as true the evidence presented by RDSS that Miller only sporadically visited the boys in the past five years. The boys were two and four years old when placed in foster care, and Miller had not maintained a relationship with them for the past five years.

The trial court was also concerned that Miller indicated at the December 1999 hearing that he had not visited the boys since June. The trial court also questioned Miller's testimony that he

-

was in the process of buying a house, but he could provide no details concerning the purchase. Evidence was also presented that Miller failed to attend twenty-six scheduled mediation meetings with RDSS concerning the boys.

Miller also argues RDSS failed to use reasonable and appropriate efforts to assist him to remedy the conditions which led to the foster care placement. RDSS instructed Miller to attend parenting classes and substance abuse counseling. The evidence proved he failed to complete either program. In 1994, RDSS advised Miller to obtain adequate housing for the boys and he has not yet moved to a larger residence. These facts support the trial court's finding that Miller has failed to remedy substantially the conditions which led to the foster care placement.

Furthermore, the evidence proved RDSS had made reasonable and appropriate efforts to communicate with Miller and strengthen his relationship with the boys. RDSS referred Miller to numerous parenting and substance abuse programs. RDSS offered transportation reimbursement for visitation and mediation services to explore long term solutions to the situation. Yet Miller attended only one of the twenty-six scheduled mediation meetings.

Therefore, the record demonstrates that appropriate services were offered by RDSS but Miller made little or no effort to respond to those offers. "The law does not require the [RDSS] to force its services upon an unwilling or disinterested parent."

-

Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986). Thus, the evidence established that, despite the passage of time, Miller had not yet resolved the problems that initially led to the children's foster care placement.

Miller argues the evidence failed to support a finding that terminating his parental rights is in the best interests of the children. The children have been in the same foster home since November 1994, and the foster parent is the prospective adoptive parent. The boys consider their foster mother as their own mother, and the evidence indicated they had a good relationship with her. The foster mother is also addressing the special needs of Andre. The foster mother testified that when Miller has had visitation with the boys, he has on occasion returned the boys late, dirty and sometimes without clothing she had packed for them.

The children have been in foster care for five years, over half of their lives, while Miller has been unable or unwilling to cooperate with the agencies seeking to assist him. He has not demonstrated that he is willing or able to remedy within twelve months the conditions that led to the boys being placed in foster care or shown good cause for his failure or inability to do so. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood

-

v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The record supports the trial court's finding that RDSS presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283 and establishing that termination of Miller's parental rights was in the children's best interests. Accordingly, we summarily affirm the decision.

Affirmed.